# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00109-SCT

*WILLIAM LYNN PRESLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/1998 |
| TRIAL JUDGE: | HON. WALTER M. O'BARR |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. MUSSELMAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: LEE MARTIN |
| | THOMAS BUCHANAN HOOD |
| | KEITH MILLER |
| DISTRICT ATTORNEY: | CRIMINAL-FELONY |
| NATURE OF THE CASE: | |
| DISPOSITION: | AFFIRMED - 06/14/2001 |
| MOTION FOR REHEARING FILED: | 7/13/2001; denied 8/23/2001 |
| MANDATE ISSUED: | 8/30/2001 |

**BEFORE BANKS, P.J., WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. William Lynn Presley pled guilty to eight (8) counts of embezzlement and was sentenced to twenty (20) years on each of the eight (8) counts, with ten (10) years suspended on each, to be served concurrently. The conviction and sentence arise out of a misuse of public funds while Presley served as Chancery Clerk of Jackson County, Mississippi. Presley appeals an order of the circuit court denying his motion to enforce his plea agreement and raises two issues: (1) the procedural treatment of motions to enforce a plea agreement; and (2) his claim that he is entitled to a lower sentence because he provided information to law enforcement authorities pursuant to a "pledge of cooperation" contained in a plea agreement.

## FACTS AND PROCEEDINGS BELOW

¶2. Presley was indicted in the Jackson County Circuit Court on twenty-eight (28) counts of embezzlement in the aggregate amount of $1.28 million. After pleading not guilty to the charges, he entered into a memorandum of understanding ("MOU") with the State and the United States in which he agreed to plead

guilty to eight (8) counts of embezzlement, cooperate in ongoing state and federal prosecutions, and resign as Chancery Clerk. In return, the State agreed, depending upon Presley's cooperation, to recommend a sentence of not more than three (3) years to run concurrently with any federal sentence he might receive and dismiss the remaining state charges. As stated above, this recommendation was conditioned upon Presley's "full cooperation," and the State retained the sole discretion to determine if Presley had fully cooperated. If the State, in its discretion, determined that Presley had not fully cooperated, the State agreed to recommend not more than twelve (12) years.

¶3. After signing the MOU, on July 14, 1998, Presley changed his plea of guilty before Circuit Judge Walter O'Barr, who was specially appointed by this Court after all of the Jackson County circuit judges recused themselves. Sentencing was set for August 13, 1998. During the change of plea hearing Judge O'Barr specifically stated that he did not join in the plea agreement and would not be bound thereby.

¶4. Presley met with state and federal agents on several occasions and gave information which incriminated himself and others on federal charges. He alleges that he was prepared to take a lie detector test, but he was never requested to do so. As agreed to in the MOU, the remaining state charges were dismissed. However, on August 5, 1998, shortly before sentencing, the District Attorney faxed a letter to Presley's counsel stating that, in the opinion of the FBI and the Attorney General's Office, Presley had not complied with his "pledge of cooperation."

¶5. At the sentencing hearing the State announced that Presley had failed to cooperate with the prosecution, and it therefore did not recommend a three-year sentence because this recommendation was conditioned on Presley's full cooperation. Judge O'Barr, who again stated that he was not bound by the plea agreement, sentenced Presley to serve twenty (20) years on each of the eight (8) counts to run concurrently. He then suspended ten (10) years on each count.

¶6. On September 2, 1998, twenty days after the sentencing and two days before the term of court ended on September 4. Presley filed a motion to enforce the plea agreement. On September 3, Judge O'Barr died without having ruled on Presley's motion. We appointed Judge William F. Coleman, Jr., to hear the motion on July 30, 1999.

¶7. After a hearing, Judge Coleman found that the State had failed to prove that Presley had not cooperated with the investigation, but denied the motion, finding that the term of court for which he (Judge Coleman) had been appointed had expired, and that he therefore did not have jurisdiction to hear the motion.

## DISCUSSION

### I. WHETHER THE TRIAL COURT COULD CONSIDER A MOTION TO ENFORCE PLEA AGREEMENT FILED AFTER SENTENCING AND BROUGHT FOR HEARING AFTER THE TERM OF COURT HAS ENDED.

¶8. The State claims that, because Presley did not file a motion to enforce plea agreement prior to the sentencing hearing, Presley waived his right to file such a motion. There is no Mississippi case, statutory law or rule on point, but there are rules of criminal procedure and case law in other jurisdictions which address this issue.

¶9. In *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), on direct appeal

from a New York state court, the defendant withdrew his not guilty plea and entered a plea of guilty after entering into a plea agreement. Between the entry of the plea and sentencing, another prosecutor took over the case. At sentencing the new prosecutor claimed not to know anything about the plea agreement with the first prosecutor. The defendant immediately objected, but the court nevertheless sentenced him to the maximum term. The United States Supreme Court held, "when a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S. Ct. at 499. The Court concluded that:

> the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petition should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.

404 U.S. at 262-63, 92 S. Ct. at 499.

¶10. In *State v. Woyan*, No. 96CA1772, 1997 WL 426117 (Ohio Ct. App. July 21, 1997), the defendant pled guilty on April 24, 1996. On September 11, 1996, the defendant filed a motion to enforce plea agreement, and on September 13, he filed a motion to withdraw his guilty plea. The appellate court cited a state criminal procedural rule as providing:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

¶11. The court noted that its rule was similar to Fed. R. Crim. P. 32(d),[1] which has been interpreted as follows:

> Even though the general rule is that motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality, . . . still the decision thereon is within the sound discretion of the trial court. . . . Thus, unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion. . . . One who enters a guilty plea has no right to withdraw it. It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion.

*Id.* at 3 (quoting *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir. 1978)). Under the federal rule, a motion for withdrawal of a plea may be made at any time before sentencing and, on a sufficient showing, even after sentencing. 3 Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d* § 537, at 188 (1982). *See also United States v. Watson*, 548 F.2d 1058, 1063 (D.C. Cir. 1977) ("There is no time limitation on when relief can be sought under Rule 32(d).").

¶12. The State points out that "a judge may not alter or vacate a sentence once the term of court in which the defendant was sentenced has ended." *Dickerson v. State*, 731 So. 2d 1082, 1085 (Miss. 1998). In *Dickerson*, we treated a "Motion to Enter Correct Sentencing Order and/or Correct Sentencing Order, Suggestion of Law, and Appropriate Relief" as a "motion to obtain relief from a final judgment." *Id.* at 1085.

We held that, although the motion was filed prior to the end of the term of court in which the sentence was imposed, the defendant failed to set the motion for hearing prior to the end of the term. His claim on appeal was denied as a result. *Id.* at 1086. It is clear that, "in the interests of justice," the merits of Presley's claims should be considered and the sentencing court should have jurisdiction over them so that "manifest injustice" may be avoided, even though his motion to enforce plea agreement was filed after sentencing.

¶13. With respect to the term of court issue, we find Miss. Code Ann. § 11-1-16 (1991) clearly gives a circuit court authority to consider a pending motion after a term has ended. *Dickerson v. State* is therefore overruled to the extent it is inconsistent with this statute.

¶14. In *Griffin v. State*, 565 So. 2d 545 (Miss. 1990), the circuit judge, in ruling on post-trial motions, granted a new trial on two counts in the indictment but denied a new trial on the one remaining count. After an appeal had been filed, the two defendants escaped and fled the jurisdiction. When they were recaptured the State moved the circuit court to vacate the order granting the new trial and reinstate the sentences on the two counts. After a lengthy discussion, we held that "the dispositive portion of the order setting aside the Griffins' convictions had all the finality of a final judgment, and clearly the passage of the next term of court deprived the circuit court of any further authority to reinstate them." *Id.* at 550. We find that this holding is correct **if and only if** there was no motion pending from the term of court in which the sentence was imposed.

¶15. In a case where a circuit judge revisited, pursuant to a sua sponte motion for reconsideration, a defendant's post-trial motions after an appeal was filed, we held that the circuit court had no jurisdiction to suspend a sentence after an appeal was filed, and

> the only time a trial judge can suspend a sentence is immediately after the defendant is convicted and at the time the trial judge announces and imposes sentence. If no appeal is perfected and defendant begins to serve the sentence imposed, the time has passed for the trial judge to suspend the sentence under § 47-7-33.

*Denton v. Maples*, 394 So. 2d 895, 897, 898-99 (Miss. 1981).

¶16. *Griffin* and *Denton* do not need to be overruled because (1) the trial court lacked jurisdiction to reconsider a sentence due to the perfection of the appeal; and (2) there was no motion pending from the term of court in which the sentence was imposed to activate the applicability of § 11-1-16.

¶17. The case of *Mississippi Comm'n on Judicial Performance v. Russell*, 691 So. 2d 929 (Miss. 1997), wherein a circuit judge modified the sentences of four convicted felons, is distinguishable because the felons had been sentenced by other circuit judges in two instances, the felons had begun serving time in all four instances, no hearings were held in two instances, the felons' attorneys were never contacted in two instances, the State was never contacted in one instance, we had affirmed the conviction in one instance, and the elapsed time between two of the sentencings and the modifications were 4 years and 13 years. There was no motion pending at the end of the term in which sentencing was imposed in any of the four cases.

¶18. We have held that, in the absence of a statute authorizing a modification of a sentence, "once a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment." *Harrigill v. State*, 403 So. 2d 867, 868-69 (Miss. 1981). Our holding in the case sub judice does not

change the ***Harrigill*** holding because § 11-1-16 gives the circuit court the power to rule on a pending motion outside the term of court. Also, it is worthwhile to note that § 11-1-16 was adopted two years after ***Harrigill*** was decided.

¶19. Of course, our holding that a circuit court cannot rule on motions which are not pending at the end of the term of court when sentencing was imposed does not apply to U.C.C.C.R. 10.05, which provides that a motion for a new trial should be filed within ten days of the entry of judgment. Therefore, if the judgment is entered on the last day of the term of court, a defendant still has ten days in which to file such a motion.

### II. WHETHER THE STATE BREACHED THE MEMORANDUM OF UNDERSTANDING AND DUE PROCESS CONCERNS.

¶20. Presley contends that (1) the State cannot unilaterally renege on a plea agreement on which a defendant has relied to his detriment; (2) the burden is on the State to prove by a preponderance of the evidence that the defendant breached the agreement and the breach was sufficiently material to warrant rescission; (3) the State never filed a formal motion to rescind the agreement as required by law; and (4) he is entitled to specific performance of the agreement. Presley cites to ***United States v. Castaneda***, 162 F.3d 832, 836 (5th Cir. 1998):

> When the government believes that a defendant has breached the terms of [an agreement] and wishes to be relieved of performing its part of the bargain[,] due process prevents the government from making this determination and nullifying the agreement unilaterally. Instead, the government must prove to the court by a preponderance of the evidence that (1) the defendant breached the agreement, and (2) the breach is sufficiently material to warrant rescission.

¶21. A plea agreement is basically a binding contract between the prosecution and the defendant that, if the defendant does a, b, and c, the prosecution will do d, e, and f. If the defendant, relying on the promise of the prosecution to recommend a lenient sentence, pleads guilty as part of what he has promised to do, and the prosecution later unilaterally rescinds the contract, the defendant has already, in reliance on the contract, acted to his detriment. The defendant should at least be given the opportunity, before sentencing, to withdraw his plea.

¶22. Professor Charles Alan Wright has written that the granting of a motion to withdraw is within the discretion of the trial court, but withdrawal

> should be permitted if it was induced by fraud, mistake, imposition, misrepresentation, or misapprehension by the defendant of his legal rights. . . .

> The defendant may withdraw his plea of guilty when the prosecution has either coerced him by threats or persuaded him by deceit to enter such a plea. . . .

> * * *

> **Cooperation with government authorities is not alone sufficient to require the granting of a motion to withdraw a guilty plea, but where the defendant shows that his cooperation was induced by government representations which were repudiated, the motion should be granted. In any event, the court has discretion to permit withdrawal of the guilty plea where defendant has cooperated with the government.**

Wright, § 537, at 190, 191, 197 (emphasis added & footnotes omitted). A dispute as to the terms of a plea bargain agreement and whether the government breached the agreement required that evidentiary hearing be conducted in connection with defendant's motion to withdraw plea of guilty. *United States v. Gonzalez-Hernandez*, 481 F.2d 648, 650 (5th Cir. 1973).

¶23. However, in the case sub judice, the Court finds that Judge O'Barr's sentencing must be affirmed. Even though the State did not formally notify, by the filing of an appropriate motion, Presley of its intent to rescind the MOU, it did send a letter to Presley's attorneys advising them that it would not recommend the three-year sentence for each count. mentioned in the MOU. Presley therefore cannot credibly argue that he was not on notice that the State would not recommend the minimum sentence. Indeed, as discussed below, the State was not required to give notice of its recommendation because, even though it determined that Presley had not "fully cooperated," it recommended a sentence within the range mentioned in the MOU.

¶24. Even though the State did not recommend the minimum sentence mentioned in the MOU, it did reserve the right to decide unilaterally whether Presley had "fully cooperated" with its investigation . Furthermore, the MOU stated that the State would recommend twelve (12) years on each count if the State determined that Presley had not "fully cooperated." The State therefore fulfilled its contractual obligation under the MOU by recommending the twelve (12) years for each count. A hearing was held before sentencing was imposed wherein Presley was given the opportunity to cross-examine an FBI agent as to the reasons why the District Attorney did not think that Presley had fully cooperated with law enforcement officers. Finally, throughout the entry of the plea and the sentencing hearing, Judge O'Barr repeatedly stated that he would not be bound by the MOU and that he would impose any sentence he deemed to be appropriate. Judge O'Barr was not a party to the MOU and could, under law, impose any sentence which was contemplated under the appropriate statute.

¶25. We finally find that Judge Coleman's finding of cooperation is error based on the plain terms of the agreement giving the State "sole discretion" to determine cooperation and further, on Judge O'Barr specifically stating he was not bound by the plea agreement. Also, Judge O'Barr was in a better position to judge the credibility of the State's witness on Presley's purported cooperation. Judge O'Barr presided over the hearing when the State's witness testified, and Judge Coleman merely had the record of the hearing to consider.

## CONCLUSION

¶26. For these reasons, William Lynn Presley's sentence and fines imposed by Judge O'Barr are affirmed. In addition, the order denying Presley's motion to enforce plea agreement is affirmed, albeit for different reasons than those given by Judge Coleman.

¶27. **CONVICTION OF EIGHT COUNTS OF EMBEZZLEMENT AND SENTENCE OF TWENTY YEARS, WITH TEN YEARS SUSPENDED, ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAYMENT OF INTEREST OF $56,277.34, INVESTIGATION EXPENSES OF $38,165.16, AND OTHER COSTS, AFFIRMED. SENTENCES ARE TO RUN CONCURRENTLY WITH EACH OTHER.**

**PITTMAN, C.J., BANKS, P.J., MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., AND SMITH, J., NOT PARTICIPATING.**

1. **(d) Withdrawal of Plea of Guilty.** A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.