## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2022-CA-00997-COA

**JOHN RYAN JOHNSON**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2022 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. RICHARD JOHNSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/03/2023 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     John Ryan Johnson (Johnson) appeals from the Warren County Circuit Court's order denying his motion for post-conviction collateral relief (PCR). Johnson argues that the circuit court judge erred when denying his PCR motion by (1) determining that the court did not have jurisdiction to alter Johnson's sentence after the term of court ended; (2) determining that Johnson's sentence for residential burglary was not grossly disproportionate; and (3) not recusing himself sua sponte from his case due to alleged prejudice from social and political influences. After a review of the record, we find no error and affirm the circuit court's order denying Johnson's PCR motion.

### FACTS AND PROCEDURAL HISTORY

## I.   Background Facts and Proceedings

¶2.   On May 4, 2018, John Ryan Johnson was arrested for the charge of burglary at a residence in Warren County. The homeowner, Courtney Houser, had arrived at her home and saw an unfamiliar car in the driveway and an unfamiliar man exiting from the back of the house. Houser lived in the home with her husband and two children: a teenage girl and a son who was legally blind. Only Houser and her son were present at the time of the burglary. When an officer arrived, he found Johnson and Houser together in the driveway conversing. The record indicates that Houser's family was acquainted with Johnson's family, although they were by no means close. In fact, Houser's letter to the court indicated that "[she did] not know [Johnson]."

¶3.   The officer entered the home with Houser and her husband to determine if anything was missing. According to the couple, it appeared that Houser's medication had been rifled through, as well as her underwear drawer. In Houser's presentence investigation report letter to the judge, she noted that her teenage daughter's "personal items" had also been rummaged through. Johnson was arrested. During the booking, a pair of women's panties were found in Johnson's pocket. Houser confirmed that the panties belonged to her. On December 29, 2018, while out on bond, Johnson was arrested for stalking Houser. According to Houser's letter to the judge, this was one of three times that Johnson came to her home in defiance of his bond. Johnson told the police that the December incident that led to his arrest for stalking was a result of him trying to apologize to Houser for the burglary.

¶4.     Johnson pled guilty to burglary of a dwelling[1] in an open plea. On June 26, 2019, Johnson's sentencing hearing took place. Houser's husband, testifying for the State, emphasized the fear and anxiety Houser and her children experienced after the burglary. He mentioned that "[Johnson has] done this to multiple women[,]" some of whom had written in to the court to request the imposition of a severe sentence. In fact, in addition to Houser, thirteen members of the community wrote to the judge to relay concerning incidents related to Johnson's instability. The letters requested the judge take the incidents into consideration during Johnson's sentencing. Johnson testified on his own behalf and apologized for his actions.

¶5.     The circuit court, in its ruling from the bench, noted that this was Johnson's first felony conviction, "although [he noted] numerous incidents of other crimes which look[ed] like they were misdemeanors." The judge observed that there were reports of erratic and mentally unstable behavior while Johnson was incarcerated.[2] The circuit court judge stated that he had read all of the pre-sentence investigation report and all of the letters submitted on behalf of Johnson and the victim. The judge stated, "I think that I ca[n] summarize that by saying that a significant portion of our community is, quite frankly, terrorized. . . [b]y this Defendant and his behavior." The circuit court judge expressed that he did not have the ability to confine someone for mental health treatment. The judge stated that Johnson would

---

[1] This crime is also known as residential burglary and falls under Mississippi Code Annotated section 97-17-23 (Rev. 2014).

[2] Specifically, in the presentencing report an employee of the Warren County Sheriff's Department stated that Johnson would get angry and was unable to calm himself down, he shouted racial slurs, and he "played with his own feces."

be sentenced to "twenty-five (25) years in the Custody of the Mississippi Department of Corrections with fifteen (15) years to serve and ten (10) years suspended and five (5) years post release supervision." Johnson was also ordered to pay fines and costs, to never again have contact with Houser or her family, and to never again enter the subdivision where he was arrested. He was also required to obtain mental health treatment from Warren Yazoo Mental Health.

## II.    PCR Proceedings

¶6.    On June 22, 2022, Johnson filed a PCR motion. Johnson was represented by his father, Attorney W. Richard Johnson, during the PCR proceedings.[3] Johnson's PCR motion claimed that his sentence was grossly disproportionate as a result of personal and political influences caused by the circuit court judge's relationship with his father. To support this contention, Johnson attached an affidavit from his father, W. Richard Johnson, listing the circuit court judge's "influences" as follows:

> On June 30, 2017, hours before the beginning of his announced retirement, after being informed that the governor intended to appoint someone other than Branan Southerland, hereinafter "Branan", presumably Petitioner's father, to serve out the remainder of his term as County Court Judge, John S. Price, Jr., hereinafter "Price" rescinded his announced resignation and served until the end of his elected term (2018).
>
> Branan had sought the governor's appointment on Price's announced resignation in 2017 but did not qualify as a candidate for the election in November 2018. Marcie Southerland, hereinafter "Marcie", Branan's mother did qualify and was successful in her campaign against Petitioner's father the only other qualifier for County Judge.
>
> Marcie had been appointed three years earlier as an Assistant DA for

---

[3] Johnson's father is also representing him in this appeal.

4

the ninth judicial district and was still serving in that capacity throughout the campaign for County Court Judge. Marcie was serving as the elected County Court Judge when Petitioner's sentence was announced on June 26, 2019.

Marcie's daughter, Lee Ann Stewart, has assisted Honorable M. James Chaney, Jr. the sentencing Judge on Petitioner's open plea, as his court administrator and has actively served in that capacity for many years prior to the sentence being imposed on Petitioner.

Marci's son-in-law, Chad Stewart, Lee Ann Stewart's husband, actively campaigned and held a sign at the largest voting precinct in support of Marcie for County Court Judge.

Marcie's son, Branan was appointed by the ninth judicial district DA to replace Marcie as Assistant DA after she was elected County Judge.

Ken Harper was very supportive and active for Marcie in her campaign for County Court Judge in 2018.

After Marcie was elected Judge, Harper qualified as a candidate against Petitioner's father who was then seeking re-election as the Warren County Prosecuting/Youth Court Attorney (election held in November 2019).

Marcie's son-in-law, Chad Stewart, again actively campaigned and held a sign at the largest voting precinct in support of Harper.

Price conducted radio ads and actively campaigned for Harper.

Judge Chaney's law clerk, Le Brown, is the wife of the senior pastor (Tim Brown) at First Presbyterian Church where Judge Chaney attends and serves and fellowships.

The victim and her family, before and after the event, attend First Presbyterian Church of Vicksburg and frequently fellowship together and sit on or near the same pew (up front) with Judge Chaney and his wife.

Further, under a working memorandum authorized by statute and filed with the Warren County Circuit Court, I, as County Prosecuting Attorney was assigned the responsibility for felony prosecution of numerous cases (DA has complete list) in which the office of the District Attorney had a conflict. Several of such cases were matters assigned to the same Judge that was the sentencing Judge in this case.

5

I also filed a pleading as counsel for Judge Chaney's wife on May 9, 2019, (one month before the plea) in a civil matter in a different court.

¶7.    On September 1, 2022, the circuit court held a hearing on Johnson's PCR motion. Attorney W. Richard Johnson opened by discussing the "influences" that he thought led to a grossly disproportionate sentence. The circuit court judge and W. Richard Johnson conducted the following exchange:

THE COURT:    I'm looking at your affidavit, and you talk about the former county court judge, and then you talk about Mr. Southerland, who's currently an assistant district attorney. You talk about the present county court judge, Marcie Southerland. You talk about the court administrator, the court administrator's husband. You talk about this Court's law clerk, and then you talk about where my wife and I sit in church at First Presbyterian. And you say you know all this as being true and correct, and that the district attorney has assigned you cases to prosecute back when this was going on and that you had filed a pleading on behalf of my wife in a -- is that a youth court matter?

JOHNSON:    It was a chancery court matter.

THE COURT:    Chancery court matter. So I guess my first question is: Are you asking this Court to recuse itself? Are you saying that . . . should have been asked for back when he was being sentenced? What . . . does all of that have to do with the price of peas in Paris?

JOHNSON:    Judge, I -- I certainly did not intend to talk about any of those people in a derogatory manner at all or to discredit them, except to say that it was . . . what my situation was at that time. I was involved with a campaign against Marcie and primarily her family, and she had the support of Judge Price, and I just think there was a kickback from my association not only with . . . being in that campaign, but also being a representative of your . . . court, Your Honor, and a representative of the district attorney's

6

|  |  |
|---|---|
| | office and -- |
| THE COURT: | So you're not asking for this Court to recuse itself at this time? |
| JOHNSON: | No, sir, I'm not. |
| THE COURT: | And are you saying that should have been done back when he was sentenced? |
| JOHNSON: | Judge, I put that in my petition, but . . . I'm not saying that -- |
| THE COURT: | Okay. |
| JOHNSON: | -- no, sir. I withdraw that contention. |

The circuit court and W. Richard Johnson also eliminated the issue of ineffective assistance of counsel, after W. Richard Johnson said that he was "not really prepared to address that issue either."

¶8. With those two issues disposed of, the circuit court focused on Johnson's request to either reconsider the length of the sentence or "make [Johnson] eligible for parole" by way of issuing a supplemental sentencing order. Johnson did not provide any legal authority that would allow the circuit court to amend the sentencing order nearly three years after the conclusion of its term.

¶9. Johnson first called witness Lane Campbell to the stand. Campbell, an attorney in Warren County, had accessed a software program called "CIBER" to gather information regarding defendants who had "sentences with regard to [section] 97-17-23."[4] Campbell

---

[4] The State later mentioned that several of the 215 defendants in the data had pled down to lesser charges, so it does not appear that all the defendants were sentenced under this statute.

7

described CIBER as "an information-gathering program" that contained "sentencing orders, dynamics of probation sentence, diversion sentence, drug court, [and] those type things." Campbell said he "went though and mined through the data that was those sentences with regard to section 97-17-23, residential burglary" in Warren County for approximately the last ten years. He said he identified about 215 related cases. From this data, he created a scatter plot graph that showed "where those data points fell in relation to sentences of terms of years." The scatter plot graph and underlying data were admitted into evidence over the State's objection.[5] Campbell identified six defendants who received more time to serve for residential burglary than Johnson (i.e., they were set to serve more than fifteen years). There were also six people on the graph who received ten years to serve in custody. The remainder of the dots in the scatter plot graph were regularly distributed under the ten-years-to-serve line. The zero-years-to-serve line contained the most points on the graph. Campbell explained that some of the offenders had other crimes in conjunction with residential burglary. He also said that he did not know which of the 215 people were first-time offenders.

¶10.    On cross-examination, the State asked Campbell if he knew the age of the defendants at the time of the commission of the crime. Campbell admitted he did not look up that information. When asked, Campbell also admitted he did not know whether any of the charted defendant's victims asked for leniency. Campbell did not know whether any of the

_____

[5] The State said that "[i]t just looks like a bunch of dots to me. I'm going to object to it just because it's confusing and doesn't seem to really . . . show anything that's worthwhile." The circuit court stated that it was not "sure how relevant it is, but I'm going to let it in."

8

defendants on his chart had gone back to make contact with their victim multiple times after their arrest. The State also pointed out that some of the defendants pled to reduced charges such as non-residential burglary, attempted burglary, receiving stolen property, and misdemeanor trespass.

¶11. Attorney W. Richard Johnson was the next to testify at the PCR hearing. He again began to discuss the "influences" on the circuit court, particularly the "inescapable relationship between the time this event happened and [his] political participation in the community." To support this contention, he admitted into evidence an article in the *Vicksburg Post* that had a story about Johnson's arrest placed directly over a political advertisement for W. Richard Johnson. When asked, however, he stated that he did not believe that his son was arrested as "some kind of political retaliation[.]" W. Richard Johnson also admitted a copy of the sentencing transcript and the presentence investigation report into evidence during his testimony before the parties proceeded with their closing remarks.

¶12. In its findings from the bench, the circuit court explained that the sentence imposed on Johnson was "not the most severe sentence that could have been handed down." The circuit court judge stated that there was no evidence that the sentence was "out of line with sentences that may have been handed down by other circuit courts in this state." He opined that the sentencing range of up to twenty-five years was "certainly within the parameters set by our legislature."

¶13. Furthermore, the circuit court judge stated:

[A]fter a term of court has expired, a court does not just have the authority to at any time reconsider a lawful sentence that's been handed down. And this Court doesn't have authority to grant parole or authorize parole consideration for someone who's been convicted of a violent offense, which our legislature has determined this to be.

. . . [A]fter this petition was filed on or about June 22nd, the Court was concerned. I . . . re-reviewed the presentence investigation report and the transcript of the hearing that was done years ago when the sentence was imposed. I was reminded of the great concern, fear, [and] terror that neighborhood in this community had of not only just the burglary, but the repeated efforts to go back to the scene, to continue to contact the victim after he had already been arrested and had explicit orders not to do so. . . . [E]ven if this Court did have the authority to reconsider the sentence, that sentence would not be any less than the sentence I've already handed down. Therefore, the petition for post-conviction relief is denied.

¶14. A subsequent order denying the PCR motion was issued on September 13, 2022. Shortly thereafter, Johnson filed his notice of appeal.

**STANDARD OF REVIEW**

¶15. "On appeal, the appropriate standard of review for denial of post-conviction relief after an evidentiary hearing is the clearly erroneous standard." *Keller v. State*, 306 So. 3d 706, 710 (¶14) (Miss. 2020) (quoting *Johns v. State*, 926 So. 2d 188, 194 (¶29) (Miss. 2006)). "Absent clear error, the Court will not disturb the [circuit] court's factual findings so long as the [circuit] court employed the correct legal standard in its analysis." *Id*. at 710-11 (¶14) (citing *Carr v. State*, 196 So. 3d 926, 942 (¶59) (Miss. 2016)). "The supreme court has explained that '[a] finding of fact is "clearly erroneous" when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made.'" *Whitehead v. State*, 299 So. 3d 899, 904 (¶15) (Miss. Ct. App. 2020) (quoting *Johns*, 926 So. 2d at 196 (¶36)). "However, when reviewing

10

issues of law, this Court's proper standard of review is de novo." *Id*. (quoting *Kidd v. State*, 221 So. 3d 1041, 1043 (¶8) (Miss. Ct. App. 2016)). "As the PCR movant, [Johnson] 'has the burden of showing [he] is entitled to relief by a preponderance of the evidence.'" *Id*.

## DISCUSSION

### I.     The Court's Jurisdiction to Alter Johnson's Sentence

¶16.     Johnson argues that the circuit court has the authority to alter or amend a sentence after the end of the term.  We disagree. The caselaw is clear that "once the circuit judge pronounces a sentence in a felony case, a sentencing order is entered of record, and the term of court expires, the circuit judge is without jurisdiction to change or modify that sentence at a later time." *Shinn v. State*, 74 So. 3d 901, 904 (¶11) (Miss. Ct. App. 2011) (citing *Campbell v. State*, 430 So. 2d 851, 853 (Miss. 1983)); *see also Presley v. State*, 792 So. 2d 950, 954 (¶18) (Miss. 2001) ("[I]n the absence of a statute authorizing a modification of a sentence, once a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment." (internal quotation marks omitted)).  Our courts have ruled that "a circuit court [has the] authority to consider a pending motion after a term has ended." *E.g.*, *Presley*, 792 So. 2d at 953 (¶13).  And we have stated that a circuit court has this authority "whether or not all or a portion of the original suspended sentence should be revoked" outside of its term of court. *Shinn*, 74 So. 3d at 904-05 (¶11).  But Johnson does not claim that either of these scenarios apply to the present case.

¶17.     Johnson argues that Mississippi's Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2020), grants a circuit court the authority to

reconsider and modify sentences. To support his contention, Johnson cites the portion of section 99-39-5(1), which states, "Any person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated . . . may file a motion to vacate, set aside or correct the judgment or sentence . . . ." But Johnson omits the remainder of the section, which adds the words "if the person claims" and then proceeds to list the circumstances under which a petitioner may pursue an amended sentence. Miss. Code Ann. § 99-39-5(1). The circumstances that would give the court the authority to alter the sentence under this statute are as follows:

> (a) That the conviction or the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of Mississippi;
>
> (b) That the trial court was without jurisdiction to impose sentence;
>
> (c) That the statute under which the conviction and/or sentence was obtained is unconstitutional;
>
> (d) That the sentence exceeds the maximum authorized by law;
>
> (e) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
>
> (f) That there exists biological evidence secured in relation to the investigation or prosecution attendant to the petitioner's conviction not tested, or, if previously tested, that can be subjected to additional DNA testing, that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution[;]
>
> (g) That his plea was made involuntarily;
>
> (h) That his sentence has expired; his probation, parole or conditional release

12

unlawfully revoked; or he is otherwise unlawfully held in custody;

(i) That he is entitled to an out-of-time appeal; or

(j) That the conviction or sentence is otherwise subject to collateral attack upon any grounds of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy.

Miss. Code Ann. § 99-39-5(1)(a)-(j). Again, Johnson does not argue that any of these statutory scenarios apply to his case. Johnson has put forth no authority under which the circuit court could have shortened his sentence or made him eligible for parole as he requested. Therefore, the circuit court had no authority to modify Johnson's sentence after its term ended, in the absence of a statute authorizing such a modification. *Presley*, 792 So. 2d at 954 (¶18). As a result, the circuit court committed no error in determining it lacked jurisdiction to shorten Johnson's sentence or make him parole eligible as Johnson requested.

## II.    Grossly Disproportionate Sentence

¶18.    Johnson also argues that his sentence was "especially cruel and shown to be grossly disproportionate to other sentences." Again, we disagree and affirm the circuit court's determination.

¶19.    Johnson pled to and was sentenced under the residential burglary statute, Mississippi Code Annotated section 97-17-23. This statute states in part:

Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

13

Miss. Code Ann. § 97-17-23(1).

¶20.     Clearly Johnson's sentence of twenty-five years, with fifteen years to serve and ten years suspended, falls within the statutory range.  "[T]he general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Nash v. State*, 293 So. 3d 265, 268 (¶11) (Miss. 2020) (quoting *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992)).  "There is, however, a very limited and rarely imposed exception to the general rule." *Id*. at (¶12). "The only exception for a party seeking relief who cannot show that his/her sentence exceeds the statutory penalty is 'proof of gross disproportionality.'" *Mapp v. State*, 310 So. 3d 335, 338 (¶7) (Miss. Ct. App. 2021) (quoting *Smith v. State*, 291 So. 3d 1, 6 (¶13) (Miss. Ct. App. 2019)).  This is because "[t]he Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Nash*, 293 So. 3d at 268 (¶12) (quoting *Ewing v. California*, 538 U.S. 11, 20 (2003)).

¶21.     "A two-step process is employed 'to determine whether a lengthy sentence is unconstitutional.'" *Mapp*, 310 So. 3d at 338 (¶7) (quoting *Willis v. State*, 911 So. 2d 947, 951 (¶15) (Miss. 2005)).  This court recently described the process as

> First, the person seeking relief must show that the sentence itself leads to an inference of gross disproportionality. Generally, sentences that do not exceed the maximum punishment allowed by statute will not be considered grossly disproportionate and will not be disturbed on appeal, but in some circumstances, proportionality review of sentences is required.
>
> Second, if it is shown that there is an inference of gross disproportionality, the United States Supreme Court has set forth factors in *Solem v. Helm*, 463 U.S. 277, 290-93 . . . (1983), to determine whether a sentence is disproportionate. These factors include: (i) the gravity of the offense and the harshness of the

14

penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* (citations and quotation marks omitted).

¶22. Here, because the sentence falls within the statutory limits, there is no inferential showing of gross disproportionality. Although a twenty-five-year sentence with fifteen years to serve may be a harsh sentence, it cannot be considered "grossly disproportionate" to Johnson's crime. Residential burglary is a serious crime. It is considered a violent crime. Miss. Code Ann. § 97-3-2(1)(o) (Rev. 2014). To decide to establish lengthy sentences for crimes such as these is "purely a matter of legislative prerogative." *Harmelin v. Michigan*, 501 U.S. 957, 962 (1991).

¶23. In cases that have found a sentence to be "grossly disproportionate," our Courts found error when "the trial judge did not use discretion . . . and simply opted for the maximum penalty." *Ford v. State*, 975 So. 2d 859, 870 (¶41) (Miss. 2008) (distinguishing *White v. State*, 742 So. 2d 1126 (Miss.1999), and *Davis v. State*, 724 So. 2d 342 (Miss. 1998), as cases where the record showed the trial judge used no discretion in sentencing). Unlike in *White* and *Davis*, Johnson is not required to serve the maximum penalty for his crime without any discretion on the part of the judge. *See id.* Johnson's time to serve does not come close to the statutory maximum, but it is closer to the halfway mark in the statutorily prescribed sentencing range. Additionally, the record shows that the circuit court considered the individual case before it and gave special consideration to the presentence investigation report. The circuit court judge noted specifically that his sentence was based on the "great

concern, fear, terror that neighborhood in this community had of not only just the burglary, but [of Johnson's] repeated efforts to go back to the scene, to continue to contact the victim after he had already been arrested and had explicit orders not to do so." The judge then exercised his discretion by opting for the sentence that required significantly less time to serve than the maximum sentence in the statute.

¶24. Moreover, Johnson's own data undermines his claim. The scatter plot graph Johnson produced shows that six of the 215 defendants in the data gathered by searching CIBER for the residential burglary statute were sentenced to a longer time to serve than Johnson. Six more defendants were sentenced to ten years to serve, only a few years less than Johnson himself. Johnson's position on the graph was surrounded by people with similar sentences to his own. This graph shows that Johnson's sentence is not "grossly disproportionate" as Johnson claims. This sentence cannot be called the "rarely imposed exception to the general rule" for sentencing under the statute that is required to find a sentence "grossly disproportionate." *Nash*, 293 So. 3d at 268 (¶12). Accordingly, we find no error in the circuit court's ruling.

### III. Sua Sponte Recusal

¶25. Finally, Johnson argues that his sentence was grossly disproportionate due to personal and political influences on the court. Johnson asserts the circuit court should have sua sponte recused itself to prevent the appearance of impropriety. But there is simply no basis for us to determine that the circuit court judge was prejudiced or that the judge should have recused himself.

¶26. "The law surrounding the recusal of a judge in Mississippi is well settled." *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶7) (Miss. 2000). "Under Canon 3 of the Code of Judicial Conduct, an appellate court, in deciding whether a judge should have disqualified himself from hearing a case uses an objective standard." *Id*. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Id*. (quoting *Jenkins v. Forrest Cnty. Gen. Hosp.*, 542 So. 2d 1180, 1181 (Miss. 1988)). "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." *Jones v. State*, 841 So. 2d 115, 135 (¶60) (Miss. 2003) (quoting *Collins v. Joshi*, 611 So. 2d 898, 902 (Miss. 1992)). This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence that produces a reasonable doubt about the validity of the presumption. *Tubwell*, 760 So. 2d at 689 (¶7) (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)). When a judge is not disqualified under the constitutional or statutory provisions the decision is left up to each individual judge and is subject to review only in a case of manifest abuse of discretion. *Id*. (citing *Buchanan v. Buchanan*, 587 So. 2d 892, 895 (Miss. 1991)).

¶27. In the present case, the only part of Attorney W. Richard Johnson's lengthy affidavit that remotely mentions the activities of Circuit Judge Chaney is the portion that stated Judge Chaney and his wife "sit on or near the same pew (up front)" as the victim. As for the rest of the "influences," none of them appear to this Court as having a connection to the circuit court judge. To echo the circuit court judge's sentiment after reviewing the affidavit,

17

"[W]hat does all of that have to do with the price of peas in Paris?" Johnson expressly told the circuit court he did not wish for the judge to recuse himself. And we cannot say that "a reasonable person, knowing all the circumstances, would harbor doubts about [Judge Chaney's] impartiality." *Tubwell*, 760 So. 2d at 689 (¶5). Johnson presented no evidence to overcome the presumption that the circuit court judge was qualified and unbiased. *Id*. As a result, we do not find that the circuit court judge abused his discretion by failing to sua sponte recuse himself in this case.

## CONCLUSION

¶28. To conclude, the circuit court did not have the authority to change Johnson's sentence after the end of term of court absent some statutory authority. We find no error in the circuit court's determination that it had no jurisdiction to do so. Johnson's twenty-five-year sentence, with fifteen years to serve, was not grossly disproportionate and was not in error. The circuit court judge did not abuse his discretion when he did not recuse himself sua sponte. Because we find no errors in the circuit court's determinations, we affirm the order denying Johnson's PCR motion.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

18